### BOCKOVER vs. AYRES.

1. A sale and conveyance by an executor under an order of the Orphans Court for the payment of testator's debts, obtained after the lapse of a year from testator's death, vests in the purchaser only such estate as the heir or devisee was seized of at the time of making the order for sale.

2. A judgment against such devisee is unaffected by such sale and conveyance; it remains a lien on the land.

3. The judgment creditor, in such case, has no right to any part or share of the surplus of the purchase money in the executor's hands after the payment of debts.

In February, 1850, Jason Bockover, the complainant, recovered a judgment in Sussex County Circuit Court, against John Ayres, for $2106, which is still unsatisfied, and on which several executions have been issued and returned. Enoch Ayres, the elder, the father of John Ayres and of the defendant, Enoch Ayres, died about the 1st of August, 1854, seized of considerable real estate in Sussex county. He left

VOL. VII.                    B

a will, dated September 23d, 1849, duly executed to pass real estate, and of which the defendant was executor. This will was proved and recorded, and letters testamentary issued to the defendant. The testator devised all his estate, real and personal, to his wife for her life, and gave and bequeathed unto his ten children, naming them, after the death of his wife, all his real and personal estate, share and share alike, and directed "that in case any of the above named shall die without leaving children, then their share to be equally divided, share and share alike, amongst the survivors of them, my children."

On the 5th day of August, 1854, John Ayres, one of the ten children named in the will, conveyed all his interest in the real estate of his father to the defendant in fee.

In December, 1855, the defendant, as executor, applied to the Orphans Court for an order to sell lands for the payment of debts, and the order was made December 8th, 1856, more than two years after the testator's death. All the real estate of the testator was sold under that order. By the final account of the defendant as executor, settled at September Term of the Orphans Court in 1858, the balance in the hands of the defendant, as executor, was settled at $3506, which was invested by him on bond and mortgage, and the interest paid to the widow during her life. She died August 8th, 1870. · One of the ten children of the testator had died without children in her life, but after testator.

The complainant, after her death, demanded of the defendant the proper share of this money which would be coming to John, or the owner of the share of testator's lands devised to John, the judgment debt of the complainant far exceeding such share of the surplus. He claimed it on the ground that, immediately upon the testator's death and before the conveyance to the defendant, his judgment became a lien upon the lands of John, and thus was entitled to be first paid out of the surplus.

The cause was argued upon final hearing upon the pleadings and proofs.

*Mr. Anderson,* for complainant.

*Mr. J. C. Potts,* for defendant.

THE CHANCELLOR.

A judgment is a lien upon all lands of which the defendant was seized or entitled to, or any estate in lands to which he was entitled at the time of the entry of the judgment, or at any time after. A remainder or reversion, if vested, can be levied upon and sold for the payment of such judgment. In this case, the right or estate of John vested in him at the death of the testator. Whether this estate was liable to be divested in case of the death of John without children, and whether such death mentioned in the will is to be referred to death before the testator or in the life of the widow, or to dying without children at any time, it will not be necessary to determine now, in the view I take of this case.

The effect of the sale by the executor for payment of debts, is fixed and settled by statute. That directs (*Nix. Dig.* 856, § 17,) that a conveyance by executors or administrators, by order of the Orphans Court for the payment of debts, "shall vest in the purchaser or purchasers all the estate that the testator or intestate was seized of at the time of his or her death, if the order be obtained in one year thereafter; and if the said order be not obtained within that time, then the said conveyance shall vest in the purchaser or purchasers all the estate that the heirs or devisees of the intestate or testator was seized of at the time of the making of the order of the Orphans Court." By this statute all the estate of the testator passes to the purchaser if the order is made in one year. The title is free from all conveyances or encumbrances by his heirs or devisees.

But when the order, as in this case, is made more than a year after his death, all conveyances made or encumbrances created by the devisee or heir, will be unaffected by the sale. The Supreme Court, in *Warrick* v. *Hunt,* 6 *Halst.* 1, and Chancellor Isaac Williamson, in *Parret* v. *Van Winkle,*

cited in that case, page 9, declare such to be the effect of the statute. The same view is taken by Master J. W. Scott, in his opinion in *Skillman* v. *Van Pelt, Saxt.* 511. The judgment of Bockover being a lien on the lands, was not affected by the sale, and still remains a lien, if not satisfied or outlawed. His right remained in the land, and the price bid and paid by the purchaser was the value of the land, subject to the lien of this judgment. It follows that Bockover can have no right to any part or share of the purchase money in the defendant's hands, as no part of his property was sold to realize it. If John Ayres had sold his share to a stranger, that stranger would have retained his interest, notwithstanding the sale to pay debts, and upon the death of the widow could have called for a partition.

The complainant having, according to this view, no interest in the surplus, it is not necessary to determine whether the interest of John was for life or in fee, or determinable upon dying without children; or whether the conveyance to the defendant, one of the devisees, would have protected the estate from this sale as it would have been protected if conveyed to a stranger; or whether any suit in equity could be maintained for this surplus in the hands of the executor until the Orphans Court should have ordered a distribution of it as directed by the twelfth section of the act, in analogy to the ruling of the Supreme Court in *The Ordinary* v. *Smith's Executors,* 3 *Green* 92.

The bill must be dismissed.